(No. 6755. December 21, 1939.)

ADA COUNTY, a Political Subdivision of the State of Idaho, BEN S. EASTMAN, SAM T. DAVIS, CLAUDE R. DAVIS, HARRY K. FRITCHMAN and W. E. PIERCE, Plaintiffs, v. C. A. BOTTOLFSEN, Governor of the State of Idaho, J. W. TAYLOR, Attorney General of the State of Idaho, GEORGE H. CURTIS, Secretary of State of the State of Idaho, CALVIN WRIGHT, State Auditor of the State of Idaho, and MYRTLE P. ENKING, State Treasurer of the State of Idaho, Being and Constituting the State Board of Equalization of the State of Idaho, Defendants.

[97 Pac. (2d) 599.]

Kenneth O'Leary, Willis C. Moffatt and Maurice H. Greene, for Plaintiffs.

J. W. Taylor, Attorney General, and R. W. Beckwith, Assistant Attorney General, for Defendants.

H. B. Thompson, *Amicus Curiae.*

HOLDEN, J.—On the second Monday of August, 1939, the State Board of Equalization of the State of Idaho, pursuant to law, met for the purpose, among others, of assessing the operating property of railroads operating in Idaho. On that date and during the meeting of the Board, applicants filed with it a petition requesting the Board to refrain from assessing certain described tracts and parcels of land as operating property of the Oregon Short Line or Union Pacific Railroad Company, claiming such lands were assessable only by the County Assessor of Ada County. August 25, 1939, the Board, nevertheless, assessed the lands as operating property.

September 22, 1939, Ada County, a political subdivision of the state, by and through Maurice E. Adkins, Chairman of the Board of County Commissioners of that county, Ben S. Eastman, Sam T. Davis, Claude R. Davis, Harry K. Fritch-

man and W. E. Pierce filed an original application in this court for a writ to review and correct the action of the Board assessing the lands described therein as operating property, the application being supported by the affidavit of Maurice E. Adkins as Chairman of the Board of County Commissioners of Ada County. Following the filing of the application in this court notice was given the Board.

It is alleged in the application that Maurice E. Adkins is a duly elected, qualified and acting County Commissioner of Ada County and is chairman of the Board of County Commissioners of said county; that since the 2d day of January, 1939, C. A. Bottolfsen, J. W. Taylor, George H. Curtis, Calvin Wright and Myrtle P. Enking have been and now are the duly elected, qualified and acting Governor, Attorney General, Secretary of State, State Auditor and State Treasurer, respectively, of the State of Idaho, and by virtue of their offices aforesaid are and constitute the State Board of Equalization of Idaho; that under and by virtue of the powers conferred upon the Board under the provisions of section 61–601, I. C. A., the Board is authorized and empowered to assess operating property of all railroads lying wholly or partly within the State of Idaho for taxation for state, county, city, town, village, school district and other purposes; that the Oregon Short Line Railroad Company and the Union Pacific Railroad Company are corporations organized and existing under and by virtue of the laws of the state of Utah and authorized to do business in the State of Idaho in compliance with the laws of this state relating to foreign corporations doing business therein; that the Oregon Short Line is the owner of the several parcels of real property therein described, located in Boise, Ada county, Idaho; that the Short Line owns and operates a line of railroad lying partly within and partly without the state; that on or about the first day of January, 1936, the Short Line leased the line of railroad theretofore operated by it and certain other property, including the said several parcels of real property, to the Union Pacific, and since that time said line of railroad has been and now is operated by the Union Pacific as lessee of the Short Line; that all of the several tracts or parcels of property described in the

application are leased by the Short Line and Union Pacific under written leases identical in form save and except as to the description of the property, the amount of the annual rental, and the designation of the purpose of the lease; that at such meeting of the Board it assessed the said several tracts and parcels of property as "operating property"; that "the assessment of each of said several tracts and parcels of land by the State Board of Equalization as operating property of the Oregon Short Line Railroad Company or the Union Pacific Railroad Company was in excess of the jurisdiction of said State Board of Equalization and was void and of no force and effect whatsoever by reason of the fact that the jurisdiction of the State Board of Equalization of the State of Idaho is by the provisions of section 61–601, Idaho Codes Annotated, limited to assessment of operating property of a line of railroad and said Board has no jurisdiction, power or authority to assess non-operating property of said railroad, including each of the several tracts and parcels above (in the application) described."

October 3, 1939, the Board filed an "answer" to the application alleging: That it does not state facts sufficient to constitute a cause of action to warrant the granting of the relief sought in that (a) applicants had an adequate and speedy remedy by prohibition open to them prior to the time the Board of Equalization acted in assessing the property; that (b) all the property described in the application lies within the right of way of the Union Pacific Railroad Company and is therefore operating property as defined by section 1463, Revised Statutes of 1887, and section 61–113, I. C. A.; that (c) the property is used only for warehouse purposes and that the buildings erected along the tracks of the lessor must have an 8-foot clearance and other pertinent regulations; that (d) all of the properties described in the application are serviced by the railroad tracks of the Union Pacific; that (e) the application comes too late as the assessments have already been certified by the Tax Commissioner to the county auditors of the several counties of this state; that (f) the matters contained in the application have been adjudicated and that such matters are now *res judicata*; and (g) "that there is now pending between said parties another

action involving the same issues presented in this application, the same being case No. 16141 in the District Court of the Third Judicial District of the State of Idaho, in and for the County of Ada, before the Honorable Charles C. Koelsch, District Judge.''

Preliminarily, these questions are presented for decision: (1) Does this court have jurisdiction to review the action of a board exercising judicial functions for the purpose of determining whether it has exceeded its jurisdiction? (2) Does the State Board of Equalization exercise judicial functions? (3) Does the application for review come too late? (4) Did applicants have ''an adequate and speedy remedy of prohibition open to them?'' (5) Has the matter in controversy here been judicially acted upon or decided?

Section 9, article V of the Constitution of the State of Idaho provides:

'' . . . . The Supreme Court shall also have original jurisdiction to issue writs of *mandamus, certiorari,* prohibition and *habeas corpus,* . . . . ''

And section 13-202, I. C. A., provides:

''A writ of review may be granted by any court except a probate or justice's court, when an inferior tribunal, board or officer exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy.''

Some 48 years ago in *Orr v. State Board of Equalization,* 3 Ida. 190, 28 Pac. 416, this court held the Board exercised judicial functions and also that it (the court) had jurisdiction to, and it did, review the action of that Board for the purpose of determining whether it had exceeded its jurisdiction and held it had in certain particulars alleged in the petition for the writ. That disposes of the first two questions.

Does the application for review come too late? The answer to the question depends upon whether applicants were required to anticipate the action of the Board in the premises or whether they could, as they did, first submit to it for decision, under section 61-601, I. C. A., the question whether certain property was or was not ''Operating property'' within

the definition of section 61–113, I. C. A. Section 61–601, *supra,* provides:

"The operating property of all railroads, . . . . wholly or partly within this state, shall be assessed for taxation for state . . . . purposes, exclusively by the State Board of Equalization."

Under the provisions of that section the Board has the power to and must determine whether property is, or is not, used in the operation of a railroad and whether property is, or is not, within the definition of section 61–113, *supra,* necessary to the maintenance and operation of a railroad in the conduct of its business. If the Board determines the property is "operating property" within the definition of the statute, then, and in that case and in that case only, it has power to assess it; otherwise, jurisdiction to assess is vested under the provisions of section 61–603, I. C. A., in the assessor of the county in which the property is located. In other words, the statute, section 61–601, *supra,* vests original jurisdiction in and makes it the duty of the Board to determine whether property is or is not "operating property." The statute having imposed that duty upon the Board, it follows the application for the writ is not too late in that there could not be anything to review until after the Board acts, and therefore, applicants did not have "an adequate and speedy remedy of prohibition open to them."

Has the matter in controversy been judicially acted upon or decided? The Board alleges "the application for a Writ of Review is insufficient to warrant this court in granting the relief prayed for, because said application does not state any facts sufficient to constitute a cause of action against the defendant which would justify this court in issuing its Writ of Review, because: 1. —— 2. —— 3. —— 4. —— [by an unnumbered paragraph] That the matters contained in said application have all been adjudicated and the matter is now *res adjudicata.* (*Oregon Short Line R. Co. v. Ada County,* 18 Fed. Supp. 842, affirmed *Ada County v. Oregon Short Line Railroad Co.,* 97 Fed. (2d) 666.)"

By the above quotation defendants plead *res judicata.* We have carefully examined the petition and find no reference whatever therein to the case of the *Oregon Short Line Rail-*

road Co. v. Ada County, supra. Hence the sufficiency of the application could not be challenged by demurrer on the ground above alleged.

Furthermore, reference to the Oregon Short Line Railroad case, supra, reported in 18 Fed. Supp. 842, discloses the State Board of Equalization, and the current members thereof (defendants in the case at bar), were not parties to the suit of the Oregon Short Line Railroad Company against Ada county, and, therefore, that the parties are not the same.

"In order to make a judgment obtained in one action conclusive in another, it must appear that the former was rendered in an action between the same parties, or between those in privity with parties to the former action."

(Collard v. Universal Automobile Ins. Co., 55 Ida. 560, 568, 45 Pac. (2d) 288; 34 C. J. 756, sec. 1165; 34 C. J. 811, sec. 1229; 34 C. J. 973, sec. 1391; 34 C. J. 984, sec. 1405.) The defendants in the case at bar were strangers to the action of the Oregon Short Line Railroad Company against Ada county, and there is no privity between defendants and the railroad.

Section 13–203, I. C. A., provides:

"The application must be made on affidavit by the party beneficially interested, and the court may require a notice of the application to be given to the adverse party, or may grant an order to show cause why it should not be allowed, or may grant the writ without notice."

Under the above-quoted statute the court may either require notice of an application for the writ to be given or grant an order to show cause why it should not be allowed. In the instant case, as above stated, notice was required.

Johnson v. Ensign, 38 Ida. 615, 617, 224 Pac. 73, also involved the issuance of a writ of review. Upon the filing of the original application the court granted an order to show cause. In response to the order to show cause, defendant Ensign filed his answer to the petition, in which the material allegations contained in the petition were denied and certain affirmative matter was pleaded. Plaintiff Johnson thereupon moved to strike the answer of the defendant therein for the reason that it attempted to raise issues of fact, and did not

purport to set up the entire record in the cause. The court said:

"The motion to strike the answer is granted, and the writ will issue. Rule 61 of this court [now Rule 62] provides that writs of *habeas corpus* and peremptory writs of mandate and prohibition will be issued only on order of the court, but that writs of review and alternative writs of mandate and prohibition may be issued by the court or a justice thereof. The issuance of a writ of review requires the furnishing to this court of the record in the lower court; and the validity of the order complained of in the petition for the writ is determined not on the allegations contained in the petition for the writ, but on the record furnished in response to the writ. In other words, while the granting of a writ of *habeas corpus* or the issuance of a peremptory writ of mandate or prohibition constitutes the relief sought by the petition therefor, the issuance of a writ of review merely puts in operation the machinery of the court for the examination of the order sought to be reviewed. The reason why a writ of review may be issued by a justice of this court, while a writ of *habeas corpus* and peremptory writs of mandate and prohibition may be issued only upon the order of the court (Rule 61) is, therefore, apparent."

"In order to give the defendant an opportunity to suggest any reason why the writ should not issue, upon the filing of the petition we directed that an order to show cause issue; and upon a hearing thereon, among other questions that might be raised, it would ordinarily be proper for the defendant to suggest the insufficiency of the petition, or the lack of jurisdiction of the court about to issue the writ, or that the question sought to be determined in the proceeding could be heard on appeal, or that there is a plain, speedy and adequate remedy. Upon the hearing on the return to the order to show cause why the writ should not issue, *the allegations of the petition are taken to be true, and the question for the court to determine is whether, the plaintiff, upon his petition, is entitled to have the writ issue."* (Italics mine.)

Moreover, this court held in *Lansdon v. State Board of Canvassers,* 18 Ida. 596, 111 Pac. 133, that:

74

· "A writ of review brings up the record of the tribunal, board or body whose acts are to be examined, and is issued for the purpose of reviewing the law applicable to the case, instead of examining the facts of the case, except in so far as an examination of the facts is necessary in the determination of the single question of jurisdiction. The purpose of the review is to determine primarily the law applicable to the case rather than the facts of the case."

And in *State Insurance Fund v. Hunt,* 52 Ida. 639, 644, 17 Pac. (2d) 354, this court said:

"Upon application for a writ of review, the sole business of this court is to inquire into the single question of jurisdiction."

It follows from what has been said that the writ shall issue, and it is so ordered.

Ailshie, C. J., and Givens and Morgan, JJ., concur. Budge, J., sat at the hearing but did not participate in the decision.